IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S.A. ex rel. LIBERTY MECHANICAL SERVICES, INC., | : : : | CIVIL ACTION |
| v. | : : | |
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY. | : : | NO. 13-4171 |

### MEMORANDUM

**Restrepo, J.**                                                             **February 21, 2014**

On July 17, 2013, Liberty Mechanical Services, Inc. ("Liberty") filed this Miller Act suit against North American Specialty Insurance Company ("NASIC"). NASIC moves to dismiss the action as untimely filed.

Liberty acknowledges its late filing, but argues that the motion should be denied on equitable tolling grounds. NASIC counters that pursuant to *U.S. for Use of Soda v. Montgomery*, 253 F.2d 509, 510 (3d Cir. 1958), the Miller Act time limit is jurisdictional, and thus, equitable tolling is not permitted. As explained below, pursuant to intervening Supreme Court authority, I find that *Soda* is no longer good law, that the Miller Act time limit should be construed as non-jurisdictional, and that a court may grant equitable tolling. However, because the Complaint lacks sufficient justification for such tolling, the result does not change, and the motion will be granted.

### I. FACTS AND PROCEDURAL HISTORY

The facts, as alleged in the Complaint, are as follows: Persuad Companies, Inc. ("Persuad") entered into a contract with the Department of Veteran Affairs ("VA") to "perform construction work on a renovation project" at a VA facility in West Philadelphia. Compl. ¶ 5. On August 27, 2010, Liberty and Persuad entered into two subcontracts whereby Liberty would

"provide the labor and materials necessary to complete the plumbing and mechanical scopes of work" at the VA facility. *Id.* ¶ 7. In total, through the original subcontracts and subsequent revisions, Persuad agreed to pay Liberty $464,005.48 for its work. *Id.* ¶¶ 8-11. Liberty's work on the project concluded in or around January of 2012. Although it apparently made no complaint about the quality of the work performed, Persuad failed to pay Liberty the final $52,535.39 owed. *Id.* at Ex. E.

Because this was a construction project on federal government property, and pursuant to the Miller Act, 40 U.S.C. § 3131 *et seq.*, Persuad secured a bond with NASIC that guaranteed payment for subcontractors working at the site. *Id.* ¶ 17. Thus, when Liberty was not paid, it sought the identification of the surety from the VA. *Id.* ¶ 18-19. In its attempts to identify the surety, Liberty made at least two unsuccessful requests to the VA, including traveling in person to the VA offices. *Id.* Finally, in September of 2012, eight to nine months after concluding its work, Liberty secured a copy of the bond, and along with it, the identification of NASIC as surety. *Id.* ¶ 20.

On September 28, 2012, Michael Burns, the owner of Liberty, sent an email to Marcelo Virgili, a representative of NASIC. *Id.* ¶ 21, Ex. E. Burns stated that Liberty was owed $52,535.00 in unpaid invoices for its work, along with additional money for a separate subcontract for which Liberty believed NASIC was the surety. *Id.* He further stated that Liberty would refuse to provide needed "close out documents until [it was] paid in full." *Id.* Finally, Burns hinted at legal action: "I have contacted my lawyer and we are going to file a claim against both bonds. He will be contacting you." *Id.*

The day following Burns' email, Virgili responded that he would "get the ball rolling on the claim against [the bond at issue] for $52,535." *Id.* ¶ 22, Ex. E. After stating that he did not

think NASIC was the surety for the second project discussed by Burns, he concluded that NASIC "reserves all rights and defenses under the contract, the bond, at law, and in equity." *Id*. Soon thereafter, Liberty submitted a claim to NASIC for the bond at issue here. *Id.* ¶ 24.

At some point after submitting a claim, Andrew Persuad, president of Persuad Companies, contacted Liberty. *Id.* ¶ 25. Persuad "indicated that [he] would issue final payment to Liberty, and therefore an action against NASIC would be unnecessary." *Id*. But in February of 2013, approximately thirteen months after finishing its work, Liberty had received no payment from Persuad. Liberty called and emailed NASIC, seeking payment, but received no response. *Id.* ¶¶ 26-27. Then, on March 18, 2013, NASIC told Liberty that it would not pay the amount allegedly owed, because any such claim was now time-barred by the Miller Act's one-year limitations period. *Id.* ¶ 28.

On June 3, 2013, Liberty filed a Miller Act suit against NASIC in the Philadelphia Court of Common Pleas. Because federal courts are the exclusive venue for Miller Act suits, that action was dismissed via preliminary objections. On July 17, 2013, one day after the state court dismissal, Liberty filed suit here. EFC No. 1. NASIC then moved to dismiss the suit as untimely filed. ECF No. 6.

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Id.* at 555. Although the Federal Rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *See id.; see also Phillips*, 515 F.3d at 231. Finally, when, as here, a complaint contains attachments, examination of the attachments is proper when considering a motion to dismiss. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### III.  DISCUSSION

#### A.  The Miller Act in the Third Circuit

"The Miller Act requires every contractor on a federal government contract exceeding $100,000 to provide '[a] payment bond with a surety . . . for the protection of all persons supplying labor and material in carrying out the work provided for in the contract.'" *U.S. ex rel. E & H Steel Corp. v. C. Pyramid Enters., Inc.*, 509 F.3d 184, 186 (3d Cir. 2007) (quoting 40 U.S.C. § 3131(b)(2)); *see also Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 264 (1999) ("[R]ecognizing that sovereign immunity left subcontractors and suppliers without a remedy against the Government when the general contractor became insolvent, Congress enacted the Miller Act."). Any supplier or sub-contractor who "has not been paid in full within 90 days" for

labor performed or supplies furnished "may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due." 40 U.S.C. § 3133(b)(1).

The Act requires that suit "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). While courts must construe the Act liberally "to protect those whose labor and materials go into public projects," *J.W. Bateson Co. v. U.S. ex rel. Bd. of Trs. of Nat. Automatic Sprinkler Indus. Pension Fund*, 434 U.S. 586, 594 (1978), the law of this Circuit has been that the Act's limitations period is a jurisdictional prerequisite to suit. *See U.S. ex rel. Soda*, 253 F.2d 509; *see also U.S. ex rel. J.D.M. Materials Co. v. Fireman's Fund Ins. Co.*, No. 98-5186, 1999 WL 94614, at *2 (E.D. Pa. Feb. 3, 1999) (citing *Soda*); *United States v. Fid. & Deposit Co. of Md.*, 999 F. Supp. 734, 741 (D.N.J. 1998) (examining the complaint for the "jurisdictional requirement of the Miller Act's one-year statute of limitations"); *Cacon, Inc. v. Fletcher & Sons, Inc.*, No. 90-2503, 1991 WL 25693 (E.D. Pa. Feb. 25, 1991) (citing *Soda* for proposition that "[c]ompliance with the statutory period is a jurisdictional prerequisite to the maintenance of any suit"); *Pittsburgh Builders Supply Co. v. Westmoreland Const. Co.*, 702 F. Supp. 106, 109 (W.D. Pa. 1989) ("The limitations period of the Miller Act has always been construed to be mandatory and jurisdictional.").

If the Act's limitations period is jurisdictional, a court may not use equity to toll it. However, as detailed below, recent Supreme Court decisions have cast significant doubt on both the persuasive and precedential value in *Soda*. Thus, I am required to conduct a more significant examination of the Miller Act and relevant Supreme Court and Third Circuit case law.

### B.  Recent Supreme Court Decisions on Jurisdiction

In recent years, the Supreme Court has frequently stated that courts must conduct a thorough analysis before holding that a statute's requirements are jurisdictional. *E.g., Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011); *Holland v. Florida*, 560 U.S. 631, 645-49 (2010); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006). In doing so, the Court acknowledged the "drastic" "consequences that attach to the jurisdictional label," and thus, has "tried . . . to bring some discipline to the use of this term." *Henderson ex rel. Henderson*, 131 S. Ct. at 1202. Given those consequences, the Court has ruled that, as a general matter, "a threshold limitation on a statute's scope shall count as jurisdictional" only when a legislature clearly so states. *Arbaugh*, 546 U.S. at 502. And, to make things simpler, the Court announced a "readily administrable bright line" that lower courts should use in their jurisdictional analyses:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Arbaugh*, 546 U.S. at 515-16 (footnote and citation omitted).

The Supreme Court has applied this jurisdictional rule in a number of recent cases. In doing so, the Court has "overturned lower court precedent and held that the extraterritorial reach of § 10(b) of the Securities Exchange Act of 1934 presents a merits issue, rather than a question of subject matter jurisdiction," *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 466 (3d Cir. 2011) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010)); found that the Antiterrorism and Effective Death Penalty Act's one-year limitations period, which "reads like an ordinary, run-of-the-mill statute of limitations," is subject to equitable tolling, *Holland*, 560 U.S. at 647; "clarified that time limitations set forth in the Federal Rules of

Bankruptcy Procedure and the Federal Rules of Criminal Procedure, respectively, were not jurisdictional in nature," *Animal Sci. Prods., Inc.*, 654 F.3d at 466 (citing *Kontrick v. Ryan,* 540 U.S. 443, 447 (2004) and *Eberhart v. United States,* 546 U.S. 12, 13 (2005) (per curiam)); and held that the 120-day limit for filing appeals of veterans benefits decisions to the Court of Appeals for Veterans Claims was "an important procedural rule" that was, nonetheless, non-jurisdictional, *Henderson ex rel. Henderson*, 131 S. Ct. 1197 at 1206. While the Court left room for considering certain non-explicit requirements as jurisdictional, especially to the extent that they had long been treated as such, *see Bowles v. Russell*, 551 U.S. 205, 209-10 (2007), the Court has consistently required an extensive analysis before deciding a requirement to be jurisdictional.

In recent years, the Third Circuit has analyzed jurisdiction under the rubric of the Supreme Court's more stringent analysis, often finding that a limitation is non-jurisdictional. *See Animal Sci. Prods., Inc.*, 654 F.3d at 468 (holding that a statutory requirement in the Foreign Trade Antitrust Improvements Act "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," and thus, is a substantive merits limitation rather than a jurisdictional requirement); *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009) (reversing Third Circuit precedent and holding that the existence of a union contract is not a jurisdictional requirement under section 301 of the Labor Management Relations Act); *Beazer E., Inc. v. Mead Corp.*, 525 F.3d 255, 261 (3d Cir. 2008) (holding that the "civil action" requirement of § 113(f)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 is non-jurisdictional); *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007) (holding that the ERISA exhaustion requirement was non-jurisdictional, and declining to follow earlier decisions that "simply sprinkled their analyses with offhanded references to the term ['jurisdictional']").

When the Circuit has ruled a requirement to be jurisdictional, it has done so because such a requirement has been long-held in that way and is "rooted in a congressionally-enacted statute," *In re Caterbone*, 640 F.3d 108, 112-13 (3d Cir. 2011), because a requirement is explicitly "tethered to [Congress'] grant of jurisdiction," *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457 (3d Cir. 2010); and because a statute "contains within itself the bounds of its jurisdiction," *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008). While the Circuit has not ruled that every statutory requirement in dispute is non-jurisdictional, it has repeatedly re-enforced the Supreme Court's bright-line rule, asking whether a statute "speaks in jurisdictional terms" or "refer[s] in any way to the jurisdiction of the district courts." *Animal Sci. Prods., Inc.*, 654 F.3d at 468 (citation omitted).

### C. Precedential Effect of *U.S. for Use of Soda v. Montgomery*

Beyond instructing lower courts to be cautious in applying a jurisdictional label without significant analysis, the Supreme Court has cast significant doubt on the precedential value of decisions which did exactly that. The Court has "'described such unrefined dispositions' as 'drive-by jurisdictional rulings' that should be accorded '*no precedential effect*' on the question of whether the federal court had authority to adjudicate the claim in suit." *Animal Sci. Prods., Inc.*, 654 F.3d 462 at 467 (quoting *Arbaugh*, 546 U.S. at 511) (emphasis added). *Soda* appears squarely to be such a case.

The entirety of the jurisdictional analysis from *Soda* is as follows:

> Appellant argues that the [Miller] Act time limit for starting litigation under it is really a condition precedent. We are inclined to agree. *United States for Benefit and Use of Berkowitz v. Frankini Construction Co.*, D.C.Mass. 1956, 139 F.Supp. 153; *United States to Use of O'Connell v. Kearns*, D.C.R.I. 1928, 26 F.2d 235; *United States to Use of Pittsburg Planing Mill Co. v. Scheurman*, D.C. Idaho 1914, 218 F. 915. We therefore consider that, despite the unmistakable attitude taken at the trial by the defense, it must be established that suit was commenced within the Act's restrictive period.

253 F.2d at 512. Thus, far from even "sprinkl[ing its] analys[i]s with offhand references to the term," *Metro. Life Ins. Co.*, 501 F.3d at 280, *Soda* lacks any jurisdictional analysis at all.

Even if some analysis could be inferred by virtue of the cases *Soda* cites, subsequent developments have abrogated or, at minimum, cast doubt on those cases, as well. For example, the Ninth Circuit now holds the Act's time limits to be non-jurisdictional, abrogating the holding in *Pittsburg Planing Mill*. *See U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174 (9th Cir. 2013). And, while it does not appear that the First Circuit has issued any holding on the matter, in recent years its district courts have also considered equitable tolling in the context of time-barred Miller Act claims. *See Safe Env't of Am., Inc. v. Employers Ins. of Wausau*, 278 F. Supp. 2d 121, 129 (D. Mass. 2003); *U.S. ex rel. Kane of New England, Inc. v. Diamond Const., Inc.*, 582 F. Supp. 886 (D. Mass. 1984). Thus, to the extent that it is actually interpreted as a jurisdictional ruling,[1] *Soda* appears to contain the precise "drive-by jurisdictional" analysis that the Supreme Court holds has "no precedential effect." *Arbaugh*, 546 U.S. at 511 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)).

---

[1] It possible that *Soda* could be read to hold only that the limit is a "condition precedent," while not necessarily reaching the question of whether it is jurisdictional. *C.f. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982) (holding that Title VII's requirement to timely file charge with EEOC is condition precedent but non-jurisdictional). Such a conclusion was reached by the Fifth Circuit. *United States v. Fidelity & Deposit Co. of Maryland*, 813 F.2d 697 (5th Cir. 1987); *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 221 (5th Cir. 2012) (noting that *Fidelity* "clarified that the one-year period of the Miller Act is limitational and not jurisdictional").

However, as outlined above, trial judges of the Third Circuit have generally read *Soda* as a jurisdictional ruling. And, when courts of this Circuit have occasionally examined equitable tolling principals with the Act, they have done so by failing to cite *Soda* at all. *See U.S. ex rel. Stan & Son Const., L.L.C. v. Pa. Nat. Mut. Cas. Ins. Co*., No. 11-3470, 2012 WL 1068710, at *3-5 (D.N.J. Mar. 28, 2012) (granting motion to dismiss but examining time-barred suit for equitable tolling grounds, while not citing *Soda*); *Clipper Fire & Serv., Inc. v. Ins. Co. of N. Am.*, No. 92-6180, 1993 WL 99201 (E.D. Pa. Mar. 29, 1993) (equitably estopping statute of limitations claim in Miller Act claim, while not citing *Soda*); *Rea-Car, Inc. v. PNM Const., Inc.,* No. 90-7540, 1991 WL 87215, at *2 (E.D. Pa. May 21, 1991) (holding that "[e]quitable estoppel is applicable to a suit under the Miller Act" while not citing *Soda*).

In sum, to the extent *Soda* is read as a jurisdictional ruling, there is no way to reconcile its exceedingly brief jurisdictional discussion with intervening Supreme Court case law. Accordingly, and pursuant to the Supreme Court's admonition that decisions such as *Soda* should be accorded no precedential effect, I find that *Soda* is of limited value. Of course, this does not end the inquiry. Instead, it compels a more searching analysis of the Act.[2]

### D.  Analyzing the Miller Act within the Supreme Court's Jurisdictional Rubric

Even in the years following the Supreme Court's recent jurisdictional jurisprudence, courts have continued to split about the nature of the Miller Act's time limit. *Compare Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 221 (5th Cir. 2012) (time limit is non-jurisdictional) *and U.S. ex rel. Martin Marietta Materials, Inc. v. DTC Eng'rs & Constructors, LLC*, No. 11-111, 2012 WL 2311491, at *5 (E.D.N.C. June 18, 2012) (same) *with U.S. ex rel. Allied Assocs. Comm'l Floors Inc. v. Farr Builders Inc.*, No. 13-897, 2014 WL 280396, at *1 (W.D. Tex. Jan. 23, 2014) (time limit is jurisdictional) *and In re Triangle Maint. Serv., LLC,* 11-15142, 2013 WL 1395850, at *3 (Bankr. N.D. Miss. Apr. 4, 2013) (same). Only three courts, however, have explicitly examined the jurisdictional nature of the Act's time limit within the context of *Arbaugh's* bright-line rule. *See U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174 (9th Cir. 2013); *United States v. Cannon Mgmt. Grp.*, *LLC*, No. 12-881, 2013 WL 4499739, at *1-4 (S.D. Ohio Aug. 21, 2013); *Highland Renovation Corp. v. Hanover Ins. Grp.*, 620 F. Supp. 2d 79, 82 (D.D.C. 2009). Each found the Act's time limit to be non-jurisdictional in nature, and thus subject to tolling.[3] And, when using *Arbaugh's* "readily administrable bright

---

[2]As noted in section F of this memorandum, the result becomes mostly academic, as the motion to dismiss must still be granted on the basis of Liberty's failure to allege sufficient facts to toll the Act.

[3] The Ninth Circuit's holding in *Air Control Technologies* is particularly instructive. The Ninth Circuit, like the Third, had held the Act's time-limits to be jurisdictional. *See U.S. ex rel. Celanese Coatings Co. v. Gullard*, 504 F.2d 466 (9th Cir. 1974). Pursuant to the Supreme Court's recent

line," it is clear that those courts are correct, and that the Act's time limit should be considered an ordinary, non-jurisdictional limitations period.

Most importantly, the Act says nothing about jurisdiction. *See Arbaugh,* 546 U.S. at 516 ("When Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non jurisdictional in character.") The only part of the law that could, at a glance, imply a jurisdictional label, § 3133(b)(3)(B), notes that cases brought pursuant to the Act should exclusively be heard in federal court. However, the Supreme Court has noted that such a provision, at least in a previous version of the Act, was "merely a venue requirement." *F. D. Rich Co., Inc. v. U.S. ex rel. Indus. Lumber Co., Inc.*, 417 U.S. 116, 125 (1974). Congress apparently agreed. When the Act was amended it re-titled this section "venue," and split it and the time-limit provision into separate subsections. *Compare* U.S.C. § 3133(b)(3)-(4) (2006) (current version) *with* 40 U.S.C. § 270b (1935) (previous version). Thus, while the Act may discuss where a case is heard, "[f]ederal courts have subject matter jurisdiction over Miller Act claims pursuant to 28 U.S.C. § 1331, and § 1331 does not 'condition[ ] its jurisdictional grant' on whether the plaintiff files his claim within the one year limitations period in § 3133(b)(4) of the Miller Act." *U.S. ex rel. Air Control Techs., Inc.*, 720 F.3d at 1177 (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165 (2010)). Accordingly, there is a strong presumption that the time limit is not jurisdictional, but instead an ordinary statute of limitations, subject to equitable tolling. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95.[4]

---

jurisdiction jurisprudence, which it found to be controlling intervening authority, the Ninth Circuit reversed its precedent. Moreover, rather than wait for an en-banc panel to resolve an intra-circuit split, as is its custom, *see Atonio v. Wards Cove Packing Co., Inc.*, 810 F.2d 1477, 1478-79 (9th Cir. 1987), the *Air Control Technologies* panel reversed on its own, finding the earlier holding to be "clearly irreconcilable with intervening higher authority." *Air Control Technologies*, 720 F.3d at 1175.

[4] Plaintiff and the Ninth Circuit term statutes of limitations "filing deadlines," which "are the quintessential claim-processing rules" that the Supreme Court has cautioned against using as a

Moreover, the Act's limitations period, which "reads like an ordinary, run-of-the-mill statute of limitations," *Holland v. Florida*, 560 U.S. at 647 (finding AEDPA time-limit to be non-jurisdictional), is not "the exceptional one in which a 'century's worth of precedent and practice in American courts rank a time limit as jurisdictional," *Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 825 (quoting *Bowles*, 551 U.S. at 210 n.2). The Supreme Court has never ruled that the Act's time limit is jurisdictional, and lower courts have reached differing conclusions. *See Highland Renovation Corp.*, 620 F. Supp. 2d at 81-82 (surveying cases). Within the Third Circuit, *Soda* has rarely been mentioned again by the Court of Appeals, with its holding, to the extent it is viewed as a jurisdictional one, sometimes ignored. *See U.S. ex rel. Stan & Son Const., L.L.C.*, 2012 WL 1068710 at *3-5; *Clipper Fire & Serv., Inc.*, 1993 WL 99201 at *2-3; *Rea-Car, Inc.*, 1991 WL 87215 at *2.

Finally, the Act is to be construed liberally "to protect those whose labor and materials go into public projects." *J.W. Bateson Co.*, 434 U.S. at 594. Given the Act's protective underpinnings, it makes little sense to write in a jurisdictional requirement that would mean that subcontractors could be subject to outright fraud or other outrageous conduct and still not be able to avail themselves of the Act's protections. *C.f. Zipes*, 455 U.S. at 398 (finding that interpreting compliance with the statutory filing period as a non-jurisdictional prerequisite subject to waiver and tolling "honor[s] the remedial purpose of [Title VII] as a whole without negating the particular purpose of the filing requirement").

---

jurisdictional bar. *See Air Control Technologies, Inc.*, 720 F.3d at 1176. This is perhaps overstated. It is true that "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'" *Irwin*, 498 U.S. at 95 (citing *Hallstrom v. Tillamook County*, 493 U.S. 20, 27 (1989); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 827 (2013) (surveying cases). But it is less than clear that the Supreme Court would deem the Act's statute of limitations to be a claims processing rule. *See* 551 U.S. at 210 (noting that jurisdictional "decisions have also recognized the jurisdictional significance of the fact that a time limitation is set forth in a statute"); *Lizardo v. United States*, 619 F.3d 273, 277 (3d Cir. 2010).

"A district court has no authority to reject a doctrine developed by a higher court unless subsequent events make it almost certain that the higher court would repudiate the doctrine if given a chance to do so." *U.S. ex rel. J.D.M. Materials Co.*, 1999 WL 94614 at *2 n.3 (citations and quotations omitted). However, pursuant to recent case law and a more robust jurisdictional analysis, it appears virtually certain that *Soda* is irreconcilable with intervening Supreme Court case law and is effectively non-precedential. Accordingly, in this very unique circumstance, I find that the Miller Act's time limit is non-jurisdictional and that I must consider Liberty's request for equitable tolling.

### E. Equitable Tolling in the Third Circuit

Plaintiff seeks to rely on equity – namely equitable tolling or equitable estoppel – to excuse its late filing. The Supreme Court has stated that the difference between equitable tolling and equitable estoppel is that "equitable tolling extends to circumstances outside both parties' control," while equitable estoppel "may bar a defendant from enforcing a statute of limitation when its own deception prevented a reasonably diligent plaintiff from bringing a timely claim." *Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 830. Put differently, equitable estoppel focuses on a defendant's wrong, while equitable tolling focuses on a more general injustice.

Here in the Third Circuit, the test for "equitable tolling" is more broadly an 'equity doctrine,' which can be applied to either a defendant's specific acts or a more general injustice, in the following circumstances:

> (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990)). Thus, what the Supreme Court or

13

another circuit may "describe[] as 'equitable estoppel' appears to be the same, in all important respects" as the Third Circuit's first ground for equitable tolling, in that it "excuses a late filing where such tardiness results from active deception on the part of the defendant." *Id.* at 1389 n.7. *Accord Russo v. Am. Airlines, Inc.*, 340 F. App'x 816, 818-19 (3d Cir. 2009) (interchangeably using terms tolling and estoppel); *Atl. Adjustment Co. v. U.S. Dep't of Labor*, 90 F. Supp. 2d 627, 629 n.4 (E.D. Pa. 2000). And, what other courts describe as "equitable tolling" is encompassed by the latter two parts of our Circuit's doctrine.

To invoke tolling, a plaintiff "must show that it exercised reasonable diligence in investigating and bringing its claims." *New Castle Cnty. v. Halliburton NUS Corp.,* 111 F.3d 1116, 1126 (3d Cir. 1997).[5] Finally "because the question [of] whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion." *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 301-02 (3d Cir. 2010).

### F. Alleged Conduct Supporting Equitable Tolling

Liberty alleges a number of interconnected reasons for its failure to timely file, which touch on each prong of this Circuit's tolling doctrine: 1) Liberty's trouble acquiring the bond; 2) actions by NASIC that lulled Liberty into not filing; 3) actions by Persuad, the contractor, but a non-party to this action; and 4) Liberty's mistaken (but still late) filing in state court.[6] None of the allegations, as pleaded in the Complaint, are sufficient for equitable tolling.

---

[5] It is especially sensible to require reasonable diligence when neither party has committed a wrong, because in such a case a defendant is suffering its own adverse consequence (the tolling of a time-barred statute).

[6] For purposes of this motion, the Court will credit the allegation that Liberty mistakenly, but in good faith, filed this action in state court, and will treat the filing date of the action for equity purposes to be June 3, 2013, the date Liberty sued there.

First, Liberty argues that the VA took nine months to produce the bond that identified NASIC as the surety. The government's delay could conceivably contribute to some sort of "extraordinary circumstances," but such circumstances are not pleaded here. As explained above, especially where a court is "dealing with two innocent parties," *Cada*, 920 F.2d 446, 453 (7th Cir. 1990), "[a plaintiff] must show that it exercised reasonable diligence in investigating and bringing its claims." *Halliburton NUS Corp.,* 111 F.3d at 1126. And when a plaintiff gathered information late, "but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within the statutory period and should have done so." *Cada*, 920 F.2d at 453. Here, while the alleged inaction of the government is troubling, Liberty still had three months to file suit after it received the bond. It waited an additional nine months to file, which is unacceptable without additional explanation. *See J.D.M. Materials Co.*, 1999 WL 94614 (E.D. Pa. Feb. 3, 1999) (denying equitable tolling on Miller Act claim when Plaintiff discovered the identity of the surety twenty-seven days prior to expiration of the statute of limitations, but filed suit on the thirty-fifth day).

Liberty's argument that NASIC's alleged conduct is enough to toll the limitations period is similarly flawed. NASIC's email to Liberty, the only alleged exchange between them, states that it would "get the ball rolling" on the claim, and that it reserved all rights under the contract. Nothing in that simple statement indicates that NASIC would pay Liberty, or was misleading Liberty into believing that it should not file suit. *See Datastaff Tech. Grp., Inc. v. Centex Const. Co., Inc.,* 528 F. Supp. 2d 587, 594 (E.D. Va. 2007) (noting that while "courts have found that prolonged negotiations and assurances of forthcoming settlements may be grounds for estoppel [in Miller Act cases], courts have consistently declined to apply equitable estoppel . . . where a surety has merely indicated to a complaining subcontractor that the subcontractor's claim was

being investigated") (surveying cases); *U.S. ex rel. E. Coast Contr'g, Inc. v. U.S. Fid. & Guar. Co.*, 133 F. App'x 58, 60 (4th Cir. 2005) (unpublished) (no equitable tolling where surety expressly reserved defense and where subcontractor "hinted at possible litigation and knew time was running out to file an action"). The exhibits to the Complaint hint at other communications with NASIC, such as telephone conversations leading up to the September 28-29, 2012 email exchange, but this is not sufficiently alleged in the Complaint, nor is any other reason that Liberty would interpret NASIC's email as a promise to pay or a request to delay suit. In sum, nothing in the email exchange between Liberty and NASIC plausibly shows that NASIC "actively misled [Liberty] respecting [Liberty's] cause of action," *Oshiver*, 38 F.3d at 1387, a cause of action which it was plainly aware at the time of the email.[7]

The last allegation that supports equitable tolling is a communication with Andrew Persuad, a non-party to the case. Specifically, Liberty alleges that at an unspecified date, Persuad "indicated that [he] would issue final payment to Liberty, and therefore an action against NASIC would be unnecessary." Amd. Compl. ¶ 25. As explained above, in the Third Circuit, a party seeking to invoke equitable tolling on the basis of a third party's actions must allege that it was "prevented from asserting [its] rights" in an "extraordinary way," and demonstrate reasonable diligence in pursuit of the claim. *Oshiver*, 38 F.3d at 1387. Liberty's vague description of its conversation with Persuad does not allege any "extraordinary" deprivation of its rights. In fact, Liberty does not even specify whether this communication was made within the statute of limitations. *See Clipper Fire & Serv.*, 1993 WL 99201 at *3 (finding important that "alleged

---

[7] Moreover, even after NASIC told Liberty it would not pay because of the limitations period, Liberty still waited another two and a half months to file suit. While not dispositive to the instant motion, at some point Liberty would have to explain why it waited to file suit even after NASIC refused to pay. *See U.S. ex rel. Martin Marietta Materials, Inc.*, 2012 WL 2311491 at *6 (equitable tolling inappropriate where a plaintiff with an errantly filed Miller Act claim waited an additional six weeks to file suit).

promises to pay were made within the one-year limitation period"). In sum, this conversation, as pleaded, does not appear to have prevented Liberty from asserting its rights.

The Complaint does, however, contain the faint suggestion that there may have been a coordinated effort between Andrew Persuad and NASIC to fool Liberty into not filing suit, such that Persuad's actions were on behalf of NASIC. If deceptive acts were taken on behalf of NASIC, NASIC is no longer an innocent party, and this could conceivably change the calculus of an equitable tolling analysis, particularly if such events occurred within the statute of limitations. To the extent that Liberty has additional facts that would demonstrate a need for equitable tolling, it may file an amended complaint.

## IV. CONCLUSION

Notwithstanding my great respect for a district court's role in the judicial process, I find that intervening rulings from the Supreme Court curtail the precedential value of *U.S. for Use of Soda v. Montgomery*, and that a fuller examination of the Miller Act's limitations period must conclude that it is an ordinary statute of limitations subject to equitable tolling, rather than a jurisdictional prerequisite. However, because the Complaint does not contain sufficient well-pleaded facts to support equitable tolling, the motion to dismiss will be granted. If Liberty presents an amended complaint, NASIC may re-raise its jurisdictional argument. To the extent an amended complaint does, in fact, demonstrate a need for equitable tolling, NASIC may then move for the certification of an interlocutory order for appeal pursuant to 28 U.S.C. § 1292(b).

An appropriate Order follows.